**SO ORDERED.**

**SIGNED this 3 day of June, 2020.**

*Stephani W. Humrickhouse*
_____
**Stephani W. Humrickhouse**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:

GRACE MARIA RAMOS,   CASE NO.: 19-05039-5-SWH
                     CHAPTER 13
    DEBTOR

### SUPPLEMENTAL OPINION ON TRUSTEE'S OBJECTION TO CLAIM

The matter before the court is the trustee's objection to the Claim of Ally Bank ("Objection") filed by the chapter 13 trustee, John F. Logan, on December 11, 2019. (Dkt. 16.) Debtor Grace Maria Ramos filed a response in opposition to the objection ("Debtor's Response") on December 16, 2019 (Dkt. 17), and on January 13, 2020, Ally Bank filed a response ("Ally Response") to the trustee's Objection and the Debtor's Response. (Dkt. 23.) A hearing was held in Raleigh, North Carolina, on January 29, 2020. After consideration of the arguments from all parties, the court entered a short order on February 14, 2020, wherein the court denied the trustee's

objection on grounds that the basis for the objection had been resolved, and provided for a $200 reduction to Ally Bank's secured claim, with that amount to be paid to the debtor's attorney through the debtor's Chapter 13 plan. In the interest of providing more insight to Ally and other similarly situated creditors seeking to prove perfection of their secured interests in motor vehicles, the court now sets forth this supplemental opinion.

## PROCEDURAL BACKGROUND

The debtor, Grace Maria Ramos, filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code on October 31, 2019. Prior to that, in January of 2019, the debtor purchased a 2019 Nissan Versa ("the vehicle"). Ally Bank ("Ally") was the lender for that purchase, and filed a proof of claim on December 6, 2019, asserting a secured claim in the amount of $15,392.40. Ally attached an "Electronic Lien and Titling Report" ("ELT Report") from PDP Technologies, which is a third-party vendor providing electronic titling and lien recording services to lenders, to its proof of claim. The ELT Report does not include the lien date.

On December 11, 2019, the trustee filed an objection to the claim, asserting that the documentation attached to Ally's proof of claim was insufficient evidence of a perfected security interest in the vehicle. The trustee's position is that a certificate of title or equivalent[1] documentation from North Carolina's Division of Motor Vehicles ("DMV") must be attached to prove a perfected security interest, and that the ELT Report does not suffice. Without such documentation, the trustee maintained, the proof of claim fails to comply with Rule 3001(d) of the

---

[1] Ally's counsel explained at the hearing that as an equivalent alternative to a certificate of title, a lienholder may request a Lien Detail Report from the DMV. A Lien Detail Report is an official document issued on DMV letterhead and includes all the available and necessary information to establish perfection.

2

Federal Rules of Bankruptcy Procedure and should be disallowed as a secured claim, but allowed as a general unsecured claim.

Five days later, the debtor filed a response to the trustee's objection and attached a document captioned "Lien Detail," which shows that Ally has perfected a lien on the vehicle and identifies the lien date as January 15, 2019.  The response states that the debtor is "doing the due diligence for the creditor in an effort to protect the Debtor's source of transportation," and on that basis requested that Ally's claim be reduced by $200.00 in order to compensate debtor's counsel. Debtor's Response at 1.

Responding to both the trustee's objection and to what it characterized as the debtor's premature and unnecessary intervention, Ally pointed out that the ELT Report attached to its proof of claim is the product of "a third party vendor approved by the State of North Carolina to provide electronic titling and lien recording to lenders with motor vehicles titled in North Carolina as their collateral."  Ally Response at 1.  Ally observed, correctly, that the documentation provided by the debtor is a "print out of a computer screen from an unknown source, presumably purporting to be the North Carolina DMV's lien record for the Vehicle."  *Id.*  And, Ally noted, the debtor filed her response less than a week after the trustee filed his objection and almost a month prior to the deadline by which Ally needed to respond to the trustee, which in Ally's view essentially pre-empted its opportunity to address the issue.  Ally represented that its counsel was in the process of obtaining the "official Lien Detail Report" and would have it within a few days, after which it would amend its proof of claim and, presumably, cure the trustee's objection.  *Id.*  In fact Ally did attach an official DMV Lien Detail Report when it amended its proof of claim on January 15, 2020.  Ally contends that the assistance rendered by the debtor was neither requested nor needed, and that the costs of that assistance should not be taxed to it.

In the hearing on this matter, which was held in sequence with hearings in other cases featuring similar issues, the trustee and counsel for all parties provided a useful overview of the issues that arise when ELT Reports are offered by creditors as proof of a perfected lien. The court took the matter under advisement, then entered a short order on February 14, 2020, in which it concluded that the ELT Report offered by Ally did not satisfy the requirements for evidence of perfection as required by Rule 3001(d). The court also awarded the debtor's attorney fees in the amount of $200.00 for time spent in providing the proper documentation to the trustee, and for participating in the hearing on the trustee's objection.[2] Because questions regarding the use of ELT Reports in this context arise on a recurring basis, the court agreed at the hearing to issue a supplemental opinion setting forth the bases for its ruling in greater detail in hopes that it would be useful for Ally and other lienholders. Those bases are set forth below.

## DISCUSSION

By way of background and context, North Carolina's DMV initiated its "N.C. Electronic Lien Titling System" in 2014. Use of that system for all lienholders who conduct a minimum of five transactions annually, which includes Ally, became mandatory on January 1, 2016. *NCDMV Initiates Electronic Lien Titling*, North Carolina Department of Transportation (Nov. 3, 2014), https://www.ncdot.gov/news/press-releases/Pages/2014/NCDMV-Initiates-Electronic-Lien-Titling.aspx. To register for the program, lienholders like Ally were required to sign up with an approved service provider. *Id.* The list of seven approved service providers can be found at www.edealersvcs.com, and are as follows: Auto Data Direct, Inc.; DDI Technology; Dealer

---

[2] Given that Ally failed to attach admissible evidence of its secured claim when the proof of claim originally was filed, the debtor was entitled to and reasonably did assume the burden of providing the correct, and necessary, documentation to ensure that Ally's claim would be paid as a secured claim through the bankruptcy plan. The $200.00 fee was paid by reducing Ally's secured claim by that amount.

4

Support Services Inc.; Dealertrack Collateral Management Services; PDP Group, Inc. (aka Simply ELT); Secure Title Administration, Inc.; and USA ELT (collectively known as "Service Providers").

North Carolina's statutory scheme also provides that "[w]hen electronic transmission of liens and lien satisfactions is used, a certificate of title need not be issued until the last lien is satisfied and a clear certificate of title is issued to the owner of the vehicle." § 20-58.4A(f). This is an exception to the general rule in North Carolina that "[t]he Division shall deliver or mail the certificate to the first secured party named in it and shall also notify the new secured party that his security interest has been noted upon the certificate of title." N.C. Gen. Stat. § 20-58.1(a). Therefore, lienholders under the electronic lien system no longer automatically get a North Carolina certificate of title with the notation of the perfected security interest from the DMV after the lien is placed. Yet, nothing in the electronic lien system under the North Carolina General Statutes alters the procedure that notation of a perfected security interest is done on the certificate of title. In fact, in the "Implementation" section, the statute provides that "the Division shall implement a statewide electronic lien system to process the notification, release, and maintenance of security interest and certificate of title date where a lien is notated, through electronic means instead of paper documents otherwise required by this Chapter." § 20-58.4A(a) (2018).

The information available from the DMV to these Service Providers includes 24 data points, or "fields," which consist of basic and/or essential details such as the name and address of the vehicle buyer, the vehicle's VIN, the title number, etc. However, as Ally's counsel explained, while all Service Providers have access to this same starting point, each Service Provider individually develops their own templates to interface with and "pull from" the DMV database. The Service Providers then provide information to their clients, such as Ally, via an Electronic

5

Lien Titling Report (the "ELT Report").  As a result, these ELT Reports can vary from one Service Provider to another and may or may not include all the available, and necessary, DMV information – and therein lies the problem.[3]

Because the ELT Reports are inconsistent in content across Service Providers, and are neither issued by nor held to the same standards as records of lien issued by the DMV, it is easy to see why creditors' use of ELT Reports has gotten a mixed reception in bankruptcy courts since implementation of this new aspect of the DMV's lien titling system.  Issues with their use arise with increasing frequency because for many large creditors, their established practice upon receipt of a notice of bankruptcy is to file a proof of claim as soon as possible and to append an ELT Report as supporting evidence of perfection. In response to the court's question of why creditors don't simply delay somewhat in filing the proof of claim in order to support the claim with an official DMV record of the lien – or, put another way, why not just do it right the first time – Ally's counsel explained that for many large creditors, their longstanding and legitimate methodology is to take virtually every required action 1) very quickly and 2) electronically.  The ELT Reports are readily available and easily appended to the proofs of claim, so certainly, they meet those goals.

The problem is that in order to prove perfection of a secured claim in the bankruptcy context, the ELT Reports must meet other standards as well.  As was discussed during the hearing in colloquy between counsel and the court, the ELT Reports appended to proofs of claim are not offered simply as "evidence to be weighed," but rather as prima facie proof of perfection.  Specifically, Rule 3001(d) of the Federal Rules of Bankruptcy provides that "[i]f a security interest

---

[3] Otherwise, there are two ways to obtain a record of the lien directly from the DMV: A lienholder can mail a completed form with a $14.00 payment to the DMV requesting a paper copy of a certificate of title, or, the lienholder can call and request an electronic "Lien Detail" report from the DMV and pay the applicable fee.  Either of these methods, which have long been in use, results in the issuance of an official DMV document.

6

in property of the debtor is claimed, the proof of claim shall be accompanied by *evidence* that the security interest has been perfected." Fed. R. Bankr. P. 3001(d) (emphasis added). The rule goes on to specify the evidentiary effect of such a filing: "A proof of claim executed and filed *in accordance with these rules* shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f) (emphasis added). Thus, there is "an evidentiary presumption that a correctly prepared proof of claim is valid as to liability and amount"; put another way, the proof of claim "*is more than 'some' evidence; it is, unless rebutted, 'prima facie' evidence.*" *In re Garner*, 246 B.R. 617, 620, 623 (B.A.P. 9th Cir. 2000) (emphasis added). Prima facie evidence is defined as evidence which is "legally sufficient to establish a fact or a case unless disproved." Merriam-Webster.com.

Satisfaction of that protocol, and that standard, is what initiates the assignment of evidentiary burdens in the proof of claim context:

> The Bankruptcy Code establishes a burden-shifting framework for proving the amount and validity of a claim. The creditor's filing of a proof of claim constitutes prima facie evidence of the amount and validity of the claim. 11 U.S.C. 502(a); Fed. R. Bankr. P. 3001(f). The burden then shifts to the debtor to object to the claim. 11 U.S.C. 502(b)…. The debtor must introduce evidence to rebut the claim's presumptive validity…. If the debtor carries its burden, the creditor has the ultimate burden of proving the amount and validity of the claim by a preponderance of the evidence.

*In re Harford Sands Inc.,* 372 F.3d 637, 640-41 (4th Cir. 2004). To gain benefit of the supported proof of claim being prima facie evidence of the perfected claim, the supporting evidence literally must play by the rules. A filed proof of claim, with appropriate documentation, gives prima facie status when that documentation is, itself, admissible evidence.

That means the documentation must comport with the Federal Rules of Evidence, which "apply to proceedings in United States courts." Fed. R. Evid. 101. Here, the ELT Report proffered by Ally is not admissible under the applicable evidentiary rules because it is hearsay and can be

7

admitted as evidence only if it qualifies as an exception to the rule against hearsay. Fed. R. Evid. 803. Ally made no effort to qualify the ELT Reports under an exception such as the business or public records exception, and it is apparent that such an effort would not have succeeded even if made given that the exceptions themselves require a showing that the evidence is *reliable*. Specifically, use of an exception requires that "the opponent does not show that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." Fed. R. Evid. 803(6)(E) (exception for records of a regularly conducted activity); *see also* Fed. R. Evid. 803(8)(B) (exceptions for public records). The court is persuaded that the ELT Reports are neither admissible nor reliable as prima facie proof of perfection.

    First, even North Carolina certificates of title (as compared to ELT Reports) are hearsay under Rule 801, because they are statements that are made not while testifying at a current trial or hearing and are offered to prove the truth of the matters asserted therein (in this case, that there is a perfected security interest in a vehicle). Fed. R. Evid. 801(a)–(c). Hearsay is inadmissible unless provided otherwise by a federal statute, the Federal Rules of Evidence, or another rule prescribed by the United States Supreme Court. Fed. R. Evid. 802. There are many exceptions to the hearsay rule, including the public records exception, which would apply to *official* DMV documents like a certificate of title. Fed. R. Evid. 803(8). A record of a public office is not excluded by the hearsay rule if "it sets out: (i) the office's activities[,] . . . and (B) the opponent does not show that the source of information or other circumstances indicate a lack of trustworthiness." *Id.* "Public records and reports are generally admissible[.]" *Beechwood Restorative Care Ctr. v. Leeds*, 856 F. Supp. 2d 580, 596 (W.D.N.Y. 2012); *see also In re Sept. 11 Litig.,* 621 F. Supp. 2d 131, 154 (S.D.N.Y. 2009). Certificates of title will be admissible as a public record because they are records

of a public office setting out the DMV's activities (titling vehicles and detailing vehicle liens). The DMV Lien Detail reports will also be admissible under this exception for the same reasons.

The ELT Reports, however, do not fall under the public records exception because they are not records or statements of a public office – they are compilations of data excerpted from such a source, by a private business entity. The hearsay exception most likely to apply is the exception for "Records of a Regularly Conducted Activity," commonly called the "business records exception," which allows for admission of records that are made at or near the time of an event, by or from information transmitted by someone with knowledge, and made and kept in the regular course of business. Fed. R. Evid. 803(6). The predicate questions to satisfy the business records exception must be asked of a custodian of the records or other qualified witness on the witness stand, or if not, then supplied by a compliant certification of the custodian or other qualified witness under Rule 902(11) or (12). *Id.* Ally has not provided such a witness in connection with the ELT Report on the debtor's vehicle. Moreover, North Carolina's statutory scheme itself requires that ELT Reports be "certified" in order to constitute admissible evidence, providing that a "*duly certified copy* of the Division's electronic record of the lien shall be admissible in any civil, criminal, or administrative proceeding in this State as evidence of the existence of the lien." N.C. Gen. Stat. § 20-58.4A(h) (emphasis added). Without exploring in detail exactly what might constitute a "duly certified copy" of the DMV's electronic records of lien, the court is certain that the ELT Reports do not meet that standard.

Finally, with respect to hearsay exceptions and also in the larger context of evidentiary standards of the most fundamental kind, the ELT Reports are inadmissible because they do not meet basic standards of reliability. As discussed earlier, the court's experience with and understanding of these reports is that the Service Providers create their own templates (and reports)

9

for their clients based on whatever business purposes they deem appropriate. That variety, and discretion, results in ELT Reports that may not even include the information necessary to accomplish the goal at hand: Without a specified lien date, the court cannot possibly determine whether a lien was perfected pre-petition. That lack of uniformity creates an uneven and uncertain footing for the ELT Reports, and constitutes precisely the sort of "lack of trustworthiness" that precludes qualification under a hearsay exception. While the ELT Reports may provide some useful information in various business contexts, they are demonstrably unreliable and do not suffice as *prima facie* proof of perfection.

Finally, the court notes further that Rule 902 governs evidence that is self-authenticating and would allow admission of business records without the custodian present, provided certain other requirements are met. Fed. R. Evid. 902(11). Rule 902 allows for admission of documents that meet the standards set out in the business records exception set forth in Rule 803(6)(A)–(C) if a custodian of the records or other qualified person files an accompanying complying certification. *Id*. Rule 902 also requires written notice to opposing parties of an intent to use the record with the certification, and that those items be available to other parties in advance, so that other parties may have an opportunity to challenge the record. *Id.*

Those requirements obviously have not been met by the ELT Reports attached to proofs of claim filed with this court, including the one in the instant case. The court also is aware that creditors like Ally simply cannot and will not, practically speaking, jump through myriad evidentiary hoops of that kind in order to accomplish the routine task of proving perfection of a secured interest. Nor would they need to, if appropriate and admissible evidence were initially provided as a matter of course. Again, the Federal Rules of Bankruptcy Procedure require that

*evidence* of a perfected security lien be attached to the proof of claim. The ELT Reports, while conveniently obtained, are inadequate to accomplish that purpose.

## CONCLUSION

Ally and similarly situated creditors are aware of the evidentiary and procedural rules that control the conduct of this court and, as the court emphasized during the hearing, disposition of this issue begins and ends with application of those rules. The court fully understands these creditors' need for expedience but cautions that their reliance on ELT reports in the context of proving perfection of a security interest will not serve that purpose, because those reports are not admissible as evidence. Accordingly, for the foregoing reasons and based upon resolution of the trustee's objection by the ultimate submission of appropriate documentation establishing perfection of Ally's secured claim, the trustee's objection to Ally Bank's Claim No. 5 was denied.

**END OF DOCUMENT**